UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JULIE DERMANSKY,

          *Plaintiff*,

   -against-

NEXSTAR MEDIA GROUP, INC.,

          *Defendant*.

------------------------------------------------------------------------x

Index No.: 23-cv-6749

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Julie Dermansky ("Plaintiff" or "Dermansky"), by and through her attorneys, brings this action against Defendant Nexstar Media Group, Inc. ("Defendant" or "Nexstar"), and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for direct copyright infringement, as well as for the violation of Plaintiff's rights under Section 1202 of the U.S. Copyright Act resulting from the unauthorized removal and/or alteration of Copyright Management Information ("CMI"), as that term is defined under 17 U.S.C. § 1202. Plaintiff, a professional commercial photographer, brings this action in response to the unauthorized use of her original copyrighted photographs, and other copyright violations, by Defendant.

### PARTIES

2. Since 2008, and at all relevant times, Plaintiff has provided professional commercial photography services, specializing in political figures, social injustice, and

1

environmental matters, with her residence and principal place of business being near New Orleans, Louisiana.

3. Upon information and belief, Defendant is a corporation organized under the laws of the State of Delaware, which has a headquarters and principal place of business located at 685 Third Avenue, New York, NY 10017.

4. Upon information and belief, Defendant is one of the largest TV station operators in the United States, and owns, operates or controls television stations located across the country, including, but not limited to, WPIX (based in New York, N.Y.), WKRG (based in Mobile, AL), and WGMB, WBRL and WVLW (each based in Baton Rouge, LA).

5. Upon information and belief, Nexstar owns, operates or controls certain websites or webpages in connection with its ownership, operation or control of the television stations that Defendant owns, operates or controls, including, but not limited to, www.wkrg.com (the "KRG Website") and www.brproud.com (the "BR Website").

**JURISDICTION AND VENUE**

6. This action arises under U.S. Copyright Act, 17 U.S.C. § 101, *et seq*.

7. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This court has personal jurisdiction over Defendant because, *inter alia*, it is registered to do business in the State of New York, and maintains a principal place of business, in the County of New York.

9. Upon information and belief, Nexstar's corporate operations within the State of New York are so continuous and systematic as to render it essentially at home in the State of New York, County of New York.

10. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

## BACKGROUND FACTS

11. Plaintiff is a professional commercial photographer, who provides, among other services, journalistic photography services to clients. Plaintiff charges and invoices these clients for the cost of her services, and further licenses her photographs for use by such clients according to limitations specified under her written and oral licensing agreements. Plaintiff also licenses her photographs for uses in print and on the Internet.

12. Plaintiff's photographs are highly valuable due to the combination of the artistic and expressive quality of her photographs, the unique or rare subject matter depicted therein, and her exclusive treatment of her photographs, which she rightfully protects.

13. Like many professional commercial photographers, Plaintiff's livelihood depends on revenue generated by licensing her original works for reproduction and public display.

**A.  Plaintiff's Photographs**

14. At issue in this lawsuit are at least two of Plaintiff's photographs, identified herein as the "Saw Photograph" and the "Oil Slick Photograph" (collectively, "Plaintiff's Photographs"), which Defendant used without authorization, attribution and compensation. Attached hereto as **Exhibit A** are copies of the Saw Photograph (**Exhibit A-1**) and Oil Slick Photograph (**Exhibit A-2**).

15. In 2017, Dermansky created the Saw Photograph, which depicts a handheld power grinder that has been altered into a power saw with bladed discs. *See* Exhibit A-1.

16. Plaintiff is the sole owner of the copyright in the Saw Photograph and registered the Saw Photograph with the U.S Copyright Office under Registration No. VA 2-062-393. Attached hereto as **Exhibit B** is a copy of the registration certificate for the Saw Photograph.

17. Dermansky created the Oil Slick Photograph in 2012, in the immediate aftermath of Hurricane Isaac, which brought oil to the shores of Louisiana from the 2010 Deepwater Horizon oil spill in the Gulf of Mexico. *See* Exhibit A-2.

18. Plaintiff is the sole owner of the copyright in the Oil Slick Photograph and registered the Oil Slick Photograph with the U.S Copyright Office under Registration No. VA No. VA 2-555-508. Attached hereto as **Exhibit C** is a copy of the registration certificate for the Oil Slick Photograph.

19. The first and only authorized publication of the Saw Photograph was in connection with an article published by the Center of Investigative Reporting ("CIR") on Reveal.com on or about February 16, 2017 (the "Reveal Report").[1] Attached hereto as **Exhibit D** is a copy of the Reveal Report.

20. The authorized publication of the Saw Photograph in the Reveal Report included a written copyright notice attributing the Saw Photograph to Plaintiff, which constitutes Copyright Management Information ("CMI") under 17 U.S.C. § 1202 (*See* **Exhibit D**, stating: "Credit: Julie Dermansky for Reveal.").

21. Pursuant to Plaintiff's agreement with CIR, any third party who republishes the Reveal Report and who desires to reproduce the Saw Photograph may only do so if they make a verbatim republication of the Reveal Report, and is required to display this photo credit.

22. Plaintiff has reserved all rights in the Saw Photograph and, other than CIR and third parties who republish the Saw Photograph in the context of a verbatim copy the Reveal Report with her photo credit, Dermansky has not licensed any third party to use the Saw Photograph or authorized its license by any third party.

---

[1] Jennifer Gollan, Reveal, "This tool cuts fingers and gashes faces, but shipbuilder still uses it" (Feb. 16, 2017), https://revealnews.org/article/this-tool-cuts-fingers-and-gashes-faces-but-shipbuilder-still-uses-it/.

23. As Plaintiff has not previously licensed any third party to use the Saw Photograph other than Reveal, the Reveal Report is the only known public source of a copy of the Saw Photograph.

24. The Oil Slick Photograph was briefly made available for licensing via Getty/Corbis, and was in fact licensed to third parties, including The Guardian. Attached hereto as **Exhibit E** is a copy of the Oil Slick Photograph as published by The Guardian in connection with a 2012 article.[2]

25. Any sublicensee of Getty/Corbis was required to attribute credit to the Oil Slick Photograph to Dermansky, just as The Guardian did when it published the Oil Slick Photograph with Dermansky's approval. (*See* **Exhibit E**, stating: "Photograph: Julie Dermansky/Corbis").

26. Getty/Corbis licensees such as The Guardian have no right to further sublicense Dermansky's photographs.

27. Dermansky has no record of Getty/Corbis ever providing a sub-license to Nexstar or any of its publications, websites, or television stations.

B.   **Defendant's Uses of Plaintiff's Photographs**

   i.   *Defendant's Uses of the Saw Photograph*

28. Upon information and belief, without authorization or permission, Defendant sourced or obtained a copy of the Saw Photograph from the Reveal Report or a verbatim copy of the Reveal Report, either by taking a screenshot, right-clicking, or downloading an unauthorized copy thereof from the Internet.

29. Upon information and belief, without authorization or permission, Defendant published, distributed, publicly displayed, created derivative works from, and otherwise used its

---

[2] Dominic Rushe, The Guardian, BP selling oil fields in Gulf of Mexico ahead of Deepwater Horizon fines (Sept. 10, 2012), available at https://www.theguardian.com/business/2012/sep/10/bp-selling-oil-fields-gulf.

5

unauthorized copy of the Saw Photograph in the creation and publication of an audiovisual video news report (the "Infringing Video"), which Defendant distributed, publicly performed, published, broadcast or otherwise transmitted via the WKRG Website and possibly elsewhere. Attached hereto as **Exhibit F** is a screen capture of the WKRG Website evidencing the use of the Saw Photograph in the Infringing Video.

30. Specifically, as shown in Exhibit F, the Saw Photograph appears for approximately five (5) seconds at or near the 0:27-0:33 time-stamp in the Infringing Video, which is only eighty-five (85) seconds long.

31. Upon information and belief, without Plaintiff's authorization or permission, Defendant further published, distributed, publicly performed and otherwise used the Infringing Video, and therefore published, distributed, publicly displayed and otherwise used the Saw Photograph on one or more dates by broadcasting or otherwise transmitting the Saw Photograph and Infringing Video via television to members of the public who were watching or recording WKRG-TV, and possibly also on other television stations, websites, or publications owned or operated by Defendant.

32. Upon information and belief, Defendant has made additional reproductions, distributions, public displays, derivative works and other uses of its unauthorized copy or copies of the Saw Photograph in addition to those described above, none of which include attribution to Dermansky as the photographer or copyright owner, or otherwise include Plaintiff's CMI.

33. Defendant did not ask Plaintiff for permission to use the Saw Photograph.

34. At the time of Defendant's creation and exploitation of the Infringing Video, neither Plaintiff, nor anyone authorized on her behalf, had granted Defendant any license or

permission to reproduce, publicly display, create derivative works of it, or otherwise use the Saw Photograph for any purpose.

35. Although the only known authorized publication of the Saw Photograph in the Reveal Report contained or conveyed Plaintiff's CMI, upon information and belief, Defendant intentionally removed and/or altered Plaintiff's CMI.

36. Upon information and belief, Defendant intentionally removed and/or altered Plaintiff's CMI knowing, or having reasonable grounds to know, that doing so would induce, enable, facilitate, or conceal an infringement of Plaintiff's rights in the Saw Photograph, including but not limited to by concealing that Defendant's own use of the Saw Photograph was infringing.

37. Upon information and belief, Defendant knowingly published and distributed an unauthorized copy of the Saw Photograph, with knowledge that Plaintiff's CMI had been removed, including but limited to knowledge that Plaintiff's credit had been removed, and knowing, or having reasonable grounds to know, that doing so would induce, enable, facilitate, or conceal an infringement of Plaintiff's rights in the Saw Photograph, including but not limited to by concealing Defendant's own infringing use of the Saw Photograph.

38. Defendant knowingly published and distributed an unauthorized copy of the Saw on the WKRG Website, and upon information and belief, one or more times by television, together with Defendant's own copyright notices, trademarks and/or logos, and as such, Defendant knowingly provided and distributed false CMI.

39. Upon information and belief, Defendant knowingly provided and distributed such false CMI with intent to induce, enable, facilitate, or conceal an infringement of Plaintiff's rights

in the Saw Photograph, including but not limited to by intending to conceal Defendant's own unauthorized and infringing use of the Saw Photograph.

40. Defendant's uses of the Saw Photograph have deprived Plaintiff from receiving licensing revenue and have caused significant monetary harm to Plaintiff, threatening her livelihood.

### ii. *Defendant's Uses of the Oil Slick Photograph*

41. Dermansky's records do not evidence any license issued by either Getty or Corbis to Defendant or to any television station, publication or website owned, operated or controlled by Defendant, and it is therefore apparent that Nextstar sourced or obtained a copy of the Oil Slick Photograph from an actual sublicensee of Getty/Corbis, who, on information and belief, also conveyed Plaintiff's CMI to its licensees, such as The Guardian, as demonstrated on Exhibit F.

42. Upon information and belief, without authorization or permission, Defendant published, distributed, publicly displayed, and otherwise used its unauthorized copy of the Oil Slick Photograph in the creation and publication of one or more news reports (the "Infringing Report"), which Defendant distributed, publicly performed, published, broadcast or otherwise transmitted via the BR Website located at www.brproud.com, and possibly elsewhere, including, upon information and belief, by television broadcast.  Attached hereto as **Exhibit G** is a screen capture of the BR Website evidencing the use of the Oil Slick Photograph in the Infringing Report.

43. Upon information and belief, Defendant has made additional reproductions, distributions, public displays, derivative works and other uses of its unauthorized copy or copies of the Oil Slick Photograph in addition to the one described above, none of which include attribution to Dermansky as the photographer or copyright owner, or include Plaintiff's CMI.

44. Defendant did not ask Plaintiff for permission to use the Oil Slick Photograph.

45. At the time of Defendant's publication, distribution, public display and other use of the Oil Slick Photograph on the BR Website, and possibly elsewhere, Plaintiff had not granted Defendant any license or permission to reproduce, publicly display, or otherwise use the Oil Slick Photograph for any purpose.

46. Although the publication of the Oil Slick Photograph by The Guardian, and upon information and belief, any other Getty/Corbis sublicensee of the Oil Slick Photograph included Plaintiff's CMI, Defendant intentionally removed and/or altered Plaintiff's CMI.

47. Upon information and belief, Defendant intentionally removed and/or altered Plaintiff's CMI knowing, or having reasonable grounds to know, that doing so would induce, enable, facilitate, or conceal an infringement of Plaintiff's rights in the Oil Slick Photograph, including but not limited to by concealing Defendant's own infringing use of the Oil Slick Photograph.

48. Upon information and belief, Defendant knowingly published and distributed an unauthorized copy of the Oil Slick Photograph, with knowledge that Plaintiff's CMI had been removed, including but not limited to knowledge that Plaintiff's CMI had been removed, and knowing, or having reasonable grounds to know, that doing so would induce, enable, facilitate, or conceal an infringement of Plaintiff's rights in the Oil Slick Photograph, including but not limited to by concealing Defendant's own infringing use of the Oil Slick Photograph.

49. Upon information and belief, Defendant intentionally altered and falsified the CMI of the Oil Slick of the Photograph by adding metadata or other information which attributes the photograph to Getty alone, which is false.

50. Defendant knowingly published and distributed an unauthorized copy of the Oil Slick on the BR Website, and possibly elsewhere, together with Defendant's own copyright notices, trademarks and/or logos, and as such, in conjunction with the false credit to Getty, Defendant knowingly provided and distributed false CMI.

51. Upon information and belief, Defendant knowingly provided and distributed such false CMI with intent to induce, enable, facilitate, or conceal an infringement of Plaintiff's rights in the Oil Slick Photograph, including but not limited to by intending to conceal Defendant's own unauthorized infringing use of the Oil Slick Photograph.

52. Defendant's uses of the Oil Slick Photograph have deprived Plaintiff from receiving licensing revenue and have caused significant monetary harm to Plaintiff, threatening her livelihood.

53. On or about May 5, 2023, Plaintiff's counsel sent a letter to Defendant which demanded that, among other things, Defendant immediately and permanently desist from using Plaintiff's Photographs.  Attached hereto as **Exhibit H** is a copy of Plaintiff's notice letter.

54. Nevertheless, as of the date of this Complaint, the Infringing Report remains publicly available and accessible, and the Oil Slick Photograph continues to be distributed and displayed on the BR Website, continuing to attribute the Photograph to Getty, without any attribution to Plaintiff, despite the fact that Defendant now has knowledge of Plaintiff's rights and of Plaintiff's CMI.

55. Plaintiff first learned of Defendant's infringements and CMI violations set forth in this complaint within three years of the filing of this action.

## FIRST CLAIM FOR RELIEF
### Direct Copyright Infringement
### 17 U.S.C. §101, *et seq*.

56. Plaintiff incorporates by reference and realleges the allegations contained in paragraphs 1 through 55, inclusive, as though fully set forth herein.

57. Plaintiff's Photographs are original copyrightable works.

58. Plaintiff is the sole author and owner of the Plaintiff's Photographs.

59. Dermansky has complied in all respects with 17 U.S.C. §101, *et seq*., and secured the exclusive rights in and ownership of each of Plaintiff's Photograph, and has filed her copyright registrations with the U.S. Copyright Office in accordance with its rules and regulations. (*See* Exhibits B & C).

60. By creating, distributing publicly performing, publishing, broadcasting, transmitting, creating derivative works, and otherwise exploiting the Infringing Video, and therefore, reproducing, distributing, publicly displaying, publishing and otherwise exploiting the Saw Photograph on the WKGR Website and, upon information and belief, on one or more television broadcasts, Defendant has infringed Plaintiff's copyright in the Saw Photograph by reproducing, distributing, creating and exploiting derivative works of, publicly performing, and publicly displaying the same, without Plaintiff's permission or authorization.

61. By publishing and displaying a copy of the Oil Slick Photograph on the BR Website, in connection with, at least the Infringing Report, Defendant has infringed Plaintiff's copyright in the Oil Slick Photograph by reproducing, distributing, and publicly displaying the same, without Plaintiff's permission or authorization.

62. As a direct and proximate result of the copyright infringement detailed herein, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

63. As a direct and proximate result of the copyright infringement detailed herein, Defendant has gained and/or will gain substantial profits as a result of its infringement in an amount presently unknown and to be determined at trial.

64. Plaintiff is entitled to recover her actual damages and any additional Defendant's profits not calculated in the computation of her actual damages in an amount to be determined at trial pursuant to 17 U.S.C. § 504(b).

65. In addition, for any infringement made after the date of her registrations, Plaintiff is entitled to elect statutory damages and to recover her costs and attorneys' fees pursuant to 17 U.S.C. § 505.

66. In addition, Plaintiff is entitled to permanent injunctive relief enjoining and restraining Defendants from infringing her copyright pursuant to 17 U.S.C. § 502.

## SECOND CLAIM FOR RELIEF
### Removal and/or Alteration of Copyright Management Information
### Digital Millennium Copyright Act, 17 U.S.C. §1202(b)

67. Plaintiff incorporates by reference and realleges the allegations contained in paragraphs 1 through 66, inclusive, as though fully set forth herein.

68. Dermansky requires any licensee of Plaintiff's Photographs to convey accurate authorship and ownership information (*i.e.*, CMI), and requires her licensees to pass that obligation to any sublicensee who seeks to use Plaintiff's Photographs with permission from such licensee.

69. The publication of the Saw Photograph in the Reveal Report included a written copyright notice attributing the authorship and ownership of the copyright in the Saw Photograph to Plaintiff, which appears just beneath the image, following the caption.

70. The publication of the Oil Slick Photograph by the Guardian (the only known licensee) included a written copyright notice attributing the authorship and ownership of the

copyright in the Oil Slick Photograph to Plaintiff, which appears just beneath the image, following the caption.

71. The foregoing constitutes CMI, in particular pursuant to 17 U.S.C. §§ 1202(c)(1), (c)(2), and (c)(3).

72. Upon information and belief, Defendant intentionally removed and/or altered the CMI provided or distributed by licensees or sublicensees of Plaintiff's Photographs.

73. Defendant knowingly distributed Plaintiff's Photograph with knowledge that Plaintiff's CMI had been removed or altered, particularly in connection with Defendant's publication and distribution of the Infringing Video and Infringing Report.

74. Defendant knew or should have known that each of its publications and/or distributions of the Plaintiff's Photographs was or is likely to induce, enable, facilitate, or conceal an infringement of Dermansky's rights in Plaintiff's Photograph.

75. Defendant knew or should have known that each of its publications and/or distributions of Plaintiff's Photograph was or is likely to conceal Defendant's own infringing uses of Plaintiff's Photographs in connection with the Infringing Video and Infringing Report.

76. Based on the foregoing, Defendant has committed at least six (6) violations of 17 U.S.C. §§ 1202(b).

77. Plaintiff has suffered actual damages as a result of the acts complained of herein in an amount to be determined at trial.

78. Defendant has gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

79. Plaintiff is entitled to recover from Defendant her actual damages and any additional Defendant's profits not taken into account in computing her actual damages pursuant to 17 U.S.C § 1203(c)(2).

80. In the alternative, and at her election, Plaintiff is entitled to recover from Defendant, for each violation of 17 U.S.C. § 1202(b), the full extent of which is unknown to Plaintiff at present and which will be proven at trial, statutory damages of up to $25,000.00 per violation pursuant to 17 U.S.C. § 1203(c)(3)(B), which equates to at least $150,000 for the six (6) known violations at the time of the filing of this Complaint.

81. Plaintiff is further entitled to recover her attorney's fees and costs from Defendant pursuant to 17 U.S.C. §§ 1203(b)(4) and (b)(5).

82. Plaintiff is also entitled to permanent injunctive relief to prevent or restrain further violations of 17 U.S.C.§ 1202(b) pursuant to 17 U.S.C. § 1203(b)(1).

## THIRD CLAIM FOR RELIEF
**Falsification of Copyright Management Information**
**Digital Millennium Copyright Act, 17 U.S.C. §1202(a)**

83. Plaintiff incorporates by reference and realleges the allegations contained in paragraphs 1 through 82, inclusive, as though fully set forth herein.

84. Defendant knowingly published and distributed one or more copies of the Saw Photograph on the WKRG Website, including in connection with the Infringing Video.

85. The WKRG Website provides and displays copyright notices, trademarks and/or logos owned or used by Defendant, on the same page or otherwise in the vicinity of Defendant's use of the Saw Photograph, and in the absence of any credit to Plaintiff as author or copyright owner.

86. Defendant knowingly published and distributed one or more copies of the Oil Slick Photograph on the BR Website, including in connection with the Infringing Report.

87. The BR Website provides and displays copyright notices, trademarks and/or logos owned or used by Defendant, on the same page or otherwise in the vicinity of Defendant's use of the Oil Slick Photograph, and in the absence of any credit to Plaintiff as author or copyright owner.

88. The BR Website also falsely credits the Oil Slick Photograph to Getty, to the exclusion of Plaintiff, in violation of Plaintiff's agreement with Getty.

89. By providing and distributing its own copyright notices, trademarks and/or logos and crediting the Oil Slick Photograph to Getty in connection with Defendant's uses of Plaintiff's Photographs, Defendant knowingly provided and distributed false CMI.

90. Defendant knowingly included its own copyright notices, trademarks and/or logos and credit to Getty with intent to induce, enable, facilitate, or conceal infringement of Dermansky's rights in Plaintiff's Photographs, including, but not limited, by intending to conceal Defendant's own infringing uses of Plaintiff's Photographs and by intending to mislead Defendant's readers and viewers into believing that Defendant is an authorized source, licensor, or authorized licensee of Plaintiff's Photographs.

91. At all times, Defendant knew or should have known that it never had any rights or interest to use either of Plaintiff's Photographs, especially without her CMI.

92. Based on the foregoing, Defendant violated 17 U.S.C. § 1202(a) on at least two separate occasions, but, upon information and belief, many more occasions, *i.e.*, in connection with each distribution, publication or broadcast of the Infringing Video and Infringing Report.

93. Plaintiff has suffered actual damages as a result of the acts complained of herein in an amount to be determined at trial.

94. Defendant has gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

95. Plaintiff is entitled to recover from Defendant her actual damages and any additional Defendant's profits not taken into account in computing her actual damages pursuant to 17 U.S.C § 1203(c)(2).

96. In the alternative, and at her election, Plaintiff is entitled to recover from Defendant, for each violation of 17 U.S.C. §§ 1202(a), the full extent of which is unknown to Plaintiff at present and which will be proven at trial, statutory damages of up to $25,000.00 per violation pursuant to 17 U.S.C. § 1203(c)(3)(B), which equates to at least $50,000 for the two (2) known violations at the time of the filing of this Complaint.

97. Plaintiff is further entitled to recover her attorney's fees and costs from Defendant pursuant to 17 U.S.C. §§ 1203(b)(4) and (b)(5).

98. Plaintiff is also entitled to permanent injunctive relief to prevent or restrain further violations of 17 U.S.C.§ 1202(a) pursuant to 17 U.S.C. § 1203(b)(1).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant as follows:

(a) For an award of monetary damages in an amount to be proven at trial, but which is no less than $250,000;

(b) For her attorneys' fees and costs;

(c) For a permanent injunction preventing further violations of her rights;

(d) For interest as allowed by law; and

(e) For such relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury for all issues so triable in this case.

Dated: August 1, 2023                                      Respectfully submitted,

**LEICHTMAN LAW PLLC**

By: /s/ *Shane Wax*
David Leichtman (DL 7233)
Shane Wax (SW 3247)
185 Madison Avenue, 15th Floor
New York, New York 10016
Tel: (212) 419-5210
dleichtman@leichtmanlaw.com
swax@leichtmanlaw.com

*Attorneys for Plaintiff Julie Dermansky*